THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
ANTHONY SPANO, DEFENDANT-RESPONDENT.

Argued March 4, 1974—Decided May 7, 1974.

*Mr. Elson P. Kendall,* Assistant Prosecutor of Union
County, argued the cause for plaintiff-appellant (*Mr. Karl
Asch,* Prosecutor of Union County, attorney; *Mr. Kendall*
on the brief).

*Mr. Ira D. Dorian* argued the cause for defendant-respon-
dent (*Mr. Matthew Grayson,* attorney).

PER CURIAM. We affirm essentially for the reasons stated
in the opinion of the Appellate Division, 128 *N. J. Super.*
90 (1973). However, we deem it necessary to elaborate

upon one ground of appeal as to which the Appellate Division said it was "deeply disturbed" and which it forcefully criticized but which was not the basis for its reversal. Unless we condemn such obvious error and unfairness on the part of a State's attorney, our silence may be interpreted as actual condonation. In our opinion, the following prejudicial statement alone is sufficient to warrant a reversal of the conviction and the granting of a new trial.

In his opening to the jury, defense counsel stated:

* * * The charges that the Prosecutor read against him have been formally entered and answered by a not guilty plea. And this today is the first time that the defendant, under our system, has an opportunity to enter a defense.

He was interrupted by the assistant prosecutor who said:

Excuse me, your Honor. I apologize for objecting during the opening of counsel, but that's not correct. *Mr. Spano had the opportunity, if he so desired, to appear before the Grand Jury and give testimony.* (Emphasis added).

Defense counsel did not object but immediately continued:

Well, that's true, I stand corrected. He could have appeared before a Grand Jury. But that's not a trial. And that's not a defense. And you only appear before a Grand Jury by the consent and invitation of the Prosecutor. If he doesn't want you to testify, you don't testify. He controls who testifies before the Grand Jury. But, be that as it may, what I said is today, under our wonderful system of justice, this is the trial.

The jury was receiving its first impression of the case and therefore it was strongly influenced by what transpired. The court did not interfere, nor were corrective or cautionary words forthcoming. The assistant prosecutor in effect said that the defendant, a police officer, could have come forward if he were innocent, but he was guilty since he failed to clear himself by appearing before the Grand Jury. The assistant prosecutor's contention is tantamount to a denial of the right of a defendant to remain silent. *Griffin v. Cali-*

*fornia,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed.* 2d 106, *reh. den.* 381 *U. S.* 957, 85 *S. Ct.* 1797, 14 *L. Ed.* 2d 730 (1965). *Cf. State v. D'Ippolito,* 19 *N. J.* 540 (1955).

The prosecutorial excess here is simply inexcusable. All concerned knew that no one appears before the Grand Jury unless he is subpoenaed or invited to testify in which event he must give his consent. And the wholly inappropriate apology of defense counsel in no way diminishes the seriousness of this error.

Despite defense counsel's failure to move for a mistrial, the prejudice flowing from the comment was definitely of such constitutional dimension as to rise to the level of plain error. *R.* 2 :10–2.

This Court has repeatedly expressed concern for prosecutorial propriety. We have said time and again that "because the prosecutor represents the government and people of the State, it is reasonable to say that jurors have confidence that he will fairly fulfill his duty to see that justice is done whether by conviction of the guilty or acquittal of the innocent." *State v. Farrell,* 61 *N. J.* 99, 105 (1972). His comments during opening and closing carry the full authority of the State. *State v. Johnson,* 31 *N. J.* 489, 511 (1960). Hence, we cannot sit idly by and condone prosecutorial excesses.

There is now a plethora of cases where prosecutors have been admonished. See *e. g., State v. Siciliano,* 21 *N. J.* 249, 262–263 (1956); *State v. D'Ippolito,* 19 *N. J.* 540, 549 (1955); *State v. Bogen,* 13 *N. J.* 137, 139 (1953). Improper comments are fast becoming too prevalent, thereby vitiating defendant's right to a fair trial.

At the risk of unseemly repetition, we set forth the prosecutor's role:

Canon 5 [now embodied in DR 7–106(C)] of the *Canons of Professional Ethics* sets forth this function: "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done." The canon summarizes Mr. Justice Sutherland's words in *Berger v. United States,* 295 *U. S.* 78, 88, 55 *S. Ct.* 629, 633, 79 *L. Ed.* 1314, 1321 (1935):

"The * * * [prosecuting] Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." (Footnote omitted) *State v. Farrell, supra,* 61 *N. J.* at 104–105.

Henceforth, an expression of displeasure may not suffice. Further and more severe action may be necessary.

We affirm the reversal of the judgment of conviction by the Appellate Division and remand for a new trial.

*For affirmance and remandment*—Chief Justice HUGHES and Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—6.