# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5199-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAVID ALCANTARA,

    Defendant-Appellant.

_____

Submitted September 22, 2020 – Decided October 9, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 14-12-3450.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira R. Scurato, Designated Counsel, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John J. Lafferty, IV, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

In 2018, a jury convicted defendant of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), which criminalizes "sexual conduct which would impair or debauch the morals of" a child for whom defendant had assumed responsibility.  In appealing, defendant argues: (1) the indictment was defective; (2) the phrase "sexual conduct" in N.J.S.A. 2C:24-4(a) is void for impermissible vagueness; (3) the jury instructions were erroneous because they allowed the jury to consider non-criminal conduct, did not contained appropriate limiting instructions, lacked special interrogatories to guarantee jury unanimity, and offered the jury no lesser-included options; and (4) the seven-year prison term, subject to an eighty-five percent period of parole ineligibility, was excessive.

We reject defendant's first two points but agree with one aspect of his third point: the judge's general unanimity instruction was erroneous in this circumstance and deprived him of a fair trial.  Consequently, we vacate the judgment of conviction and remand for a new trial without reaching the other aspects of defendant's third point, his fourth point regarding the sentence

imposed, or the cumulative error argument contained in defendant's pro se supplemental brief.[1]

I

Defendant was indicted in 2014 and charged with second-degree endangering the welfare of a child, his stepdaughter. The indictment asserted that the alleged sexual conduct occurred between October 1, 2005, and June 1, 2012. During that six-year, seven-month time period, N.J.S.A. 2C:24-4's reach covered only children under sixteen years of age. Since defendant's stepdaughter, the alleged victim, turned sixteen on October 4, 2011, defendant now argues – for the first time – that the indictment was defective because it charged him, in part, with victimizing a child over the age of sixteen. Although N.J.S.A. 2C:24-4(a) was amended in 2013 to include victims between sixteen and eighteen under its umbrella, see L. 2013, c. 51, the amendment came after the conduct alleged in the indictment. As a result, the indictment charged defendant with violating N.J.S.A. 2C:24-4(a) for conduct that, at least partially,

---

[1] In his pro se supplemental brief, defendant presents similar arguments to those posed in his attorney's first and second points. In his third point, defendant argues that "the massive and cumulative number of errors in the jury instructions and prosecution renders the verdict, sentence and trial unconstitutional in violation of due process." In light of our disposition of the appeal, we need not reach this third pro se argument.

A-5199-17T1

was not made unlawful by the statute, nor could the Legislature criminalize his alleged conduct between the stepdaughter's sixteenth birthday and June 1, 2012, through its 2013 amendment. See generally State v. Hester, 233 N.J. 381 (2018).

The unartful nature of the indictment generated a problematic specter for this prosecution. It raised the potential for the jury to hear evidence that was both covered and uncovered by N.J.S.A. 2C:24-4(a), to defendant's prejudice. But our careful reading of the trial transcript reveals that the State offered no evidence about what defendant may have done after his stepdaughter's sixteenth birthday. Moreover, the stepdaughter testified that the things of which she complained had ended around the time she was fourteen.

Yet, defendant argues for the first time here that the indictment was defective and should have been dismissed. The problem to which we have alluded, however, should have been raised prior to trial. Defendant waived this argument by failing to raise it until now. R. 3:10-2(c); State v. Spano, 128 N.J. Super. 90, 92 (App. Div. 1973), aff'd, 64 N.J. 566 (1974).

II

Defendant argues in his second point that N.J.S.A. 2C:24-4(a) "is facially vague as to its criminalization of what constitutes 'sexual conduct.'" To put this

argument in its proper setting, we initially consider the evidence adduced by the State at trial.

In her testimony, defendant's stepdaughter related how, starting when she was nine-years old, defendant would play a "game" with her that involved his patting her buttocks as she walked by; she testified this continued until she was approximately eleven-years old. The stepdaughter also recounted how, when she was between nine and twelve, defendant would call her and her friend "lesbians." When his stepdaughter entered puberty at twelve, which continued until she was fourteen, defendant made comments about her body, saying things like: "oh God, your boobs are getting big"; "you're really developing into a woman"; "your boobs are getting huge"; and "you have juicy lips." She also testified that during the same general time frame when defendant was making these types of comments about her body, defendant would

- lie with her in a position she referred to as "spooning" – with his body behind her, his chest to her back, facing in the same direction – while watching television;

- on many occasions and on "the silliest of excuses," enter the bathroom while she was showering, the shower curtain being partly transparent; and

- attempt to lay down next to her in her bunkbed at night.

5

Defendant's stepdaughter testified that, when she was thirteen or fourteen, defendant's conduct discontinued because she "finally" "stood up for [her]self" and told him to stop.

In considering defendant's vagueness argument, we recognize that the Legislature provided no great specificity about what was being criminalized by N.J.S.A. 2C:24-4(a) beyond the general description contained in the statute itself. The term "sexual conduct" is not defined by N.J.S.A. 2C:24-4(a) or elsewhere in the Criminal Code, but the Supreme Court has held that the phrase includes sexual assaults and sexual contacts, State v. Perez, 177 N.J. 540, 553 (2003), as well as conduct that does not constitute an assault or contact, State in Interest of D.M., 238 N.J. 2, 20 n.6 (2019), limited only by the modifying phrase: "which would impair or debauch the morals of a child."

But the absence of greater definition does not render this statute impermissibly vague. The void-for-vagueness doctrine is "essentially a procedural due process concept grounded in notions of fair play." State v. Lashinsky, 81 N.J. 1, 17 (1979). Because, in the criminal context, statutes must be given "sharper scrutiny," State v. Afanador, 134 N.J. 162, 170 (1993), a statute is understood to be impermissibly vague if it leaves persons "of common intelligence" to "necessarily guess as to its meaning and differ as to its

6

application," ibid. (quoting Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)).

Despite the absence of further definition, the challenged phrase "sexual conduct"[2] has been applied in numerous instances that reach beyond "assaults" and "contacts" and has long been understood as encompassing broader conduct. In considering this very subject, the Supreme Court has held that juries are "well-equipped" to find the statute's "sexual conduct" element, as well as the "impair/debauch" element, by drawing on their own knowledge, experience and common sense. State v. Hackett, 166 N.J. 66, 81-82 (2001). Adhering to this approach, courts have held that N.J.S.A. 2C:24-4(a) permissibly criminalizes a variety of conduct constituting neither a sexual assault nor sexual contact, such as an offender: showing nude photos to a child, State v. White, 105 N.J. Super. 234, 237 (App. Div. 1969); being nude in a window where he could be seen by children, State v. Hackett, 323 N.J. Super. 460, 472 (App. Div. 1999), aff'd as modified, 166 N.J. 66 (2001); engaging in a telephone conversation with children about their private parts, oral sex, and other similar topics, State v. Maxwell, 361 N.J. Super. 502, 517-18 (Law Div. 2001), aff'd o.b., 361 N.J.

_____

[2] Defendant does not argue that the "impair/debauch" element is impermissibly vague.

Super. 401 (App. Div. 2003); offering to pay children to report their sexual activities, State v. McInerney, 428 N.J. Super. 432, 451 (App. Div. 2012); and asking a child to send a photo of her breasts, State v. Johnson, 460 N.J. Super. 481, 494-95 (Law Div. 2019).

And so, in light of this history, we find no merit in defendant's void-for-vagueness argument. We are satisfied that if the stepdaughter's testimony was credited, the jury could have found that defendant engaged in some act of "sexual conduct." In light of this and our holding in section III of this opinion, we need not further consider whether all the things of which defendant was accused constitute "sexual conduct" or whether all would "impair or debauch" the child's morals. N.J.S.A. 2C:24-4(a).

### III

An essential ingredient of fair trials is the obligation placed on trial judges to accurately and adequately instruct juries on how to apply the law. State v. Maloney, 216 N.J. 91, 104-05 (2013); State v. Green, 86 N.J. 281, 287 (1981). Defendant claims the jury instructions were erroneous in a number of ways. Because we agree the judge's unanimity instructions were insufficient and deprived defendant of a fair trial, we need not address the other related arguments about the charge.

A-5199-17T1

Rule 1:8-9 requires that "verdicts shall be unanimous in all criminal actions." That rule-based requirement – as the Court held in State v. Parker, 124 N.J. 628, 633 (1991) – was also "presuppose[d]" by Article I, paragraph 9 of our State Constitution. As a result, courts must be vigilant in ensuring that guilty verdicts are not rendered on a jury's "patchwork" view but on a "shared" view of the evidence. Parker, 124 N.J. at 636-37. In this regard the Parker Court relied on United States v. Gipson, 553 F.2d 453, 457 (5th Cir. 1977), which declared, in quoting the reasonable-doubt holding expressed in In re Winship, 397 U.S. 358, 364 (1970), that "the unanimous jury requirement 'impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue.'" 124 N.J. at 633.

While providing a broad rule that a specific instruction on unanimity should be given "in cases where there is a danger of a fragmented verdict," State v. Frisby, 174 N.J. 583, 597-98 (2002), the Court provided examples, advising that this danger might arise when:

> (1) a single crime could be proven by different theories supported by different evidence, and there is a reasonable likelihood that all jurors will not unanimously agree that the defendant's guilt was proven by the same theory; (2) the underlying facts are very complex; (3) the allegations of one count are either contradictory or marginally related to each other; (4)

A-5199-17T1

the indictment and proof at trial varies; or (5) there is strong evidence of jury confusion.

[State v. Cagno, 211 N.J. 488, 517 (2012) (quoting Parker, 124 N.J. at 635-36).]

A relatively simple example is that of an alleged robbery, a charge requiring a finding that the defendant, in the course of committing a theft, inflicted bodily injury or used force "upon another." N.J.S.A. 2C:15-1(a)(1). In State v. Gentry, 370 N.J. Super. 413, 416 (App. Div. 2004), we considered the inquiry of jurors, during deliberations, whether they could convict the defendant of robbery if one group of jurors thought force was used on one person inside the store while another group thought force was used on some other person in the vestibule and outside the store. The trial judge instructed that if all jurors found that force was used it didn't matter if they disagreed about which person was victimized by that force. Id. at 417. A majority of this court held that the jury was not required to agree on that fact, id. at 425, but the Supreme Court reversed, adopting the dissenting judge's view, id. at 426, in holding the jury was required to agree on the identity of the victim of the defendant's use of force, State v. Gentry, 183 N.J. 30, 33 (2005).

Unlike Gentry – where the operative facts occurred in a short span of time in the same vicinity and provided a clear choice for the jury between two

A-5199-17T1

possible events – prosecutions under N.J.S.A. 2C:24-4(a) present their own difficulties about unanimity. In Frisby, 174 N.J. at 587, the defendant was convicted of second-degree endangering under N.J.S.A. 2C:24-4(a), in connection with the death of her son. At trial, the State offered two theories: the defendant inflicted the injuries or she abandoned her son. Id. at 598-99. In recognizing that the jury was asked to consider "[d]ifferent theories . . . based on different facts and entirely different evidence," the Court concluded that the absence of a specific unanimity charge allowed for "a non-unanimous patchwork verdict." Ibid. The Court concluded that even in the absence of evidence that the jury reached a patchwork verdict, the argument that such evidence is required "dices the notion of jury confusion referred to in our unanimity case law too finely." Ibid.

In State v. T.C., 347 N.J. Super. 219, 223, 241 (App. Div. 2002), which preceded the Court's holding in Frisby,[3] we concluded that a specific unanimity charge was not required where the defendant was charged with abusing or neglecting her child, over the course of sixteen months, in three ways: hitting him with a belt; restraining him through installation of an alarm on the door to

---

[3] The Frisby Court neither endorsed nor rejected T.C., holding only that it was factually distinguishable. 174 N.J. at 599-600.

A-5199-17T1

his room; and withholding food.  We viewed these three categories of abuse as "conceptually similar" because they all "degrad[ed]" the child and were all "'parts of defendant's plan to abuse and torture'" the child.  Id. at 243.  We thus harmonized that conclusion with Parker, 124 N.J. at 639, where a teacher was charged with official misconduct based on allegations that:  "she had exhibited sexually explicit magazines to students"; "caused her students to make collages from photographs in those magazines"; and "discussed her own and others' sexual proclivities with her students."  T.C., 347 N.J. Super. at 242-43 (citing Parker, 124 N.J. at 631-32).

Despite the many attempts to categorize cases in which specificity is required, the Supreme Court has recognized that, in the final analysis, juries must be unanimous on the "material facts" and "only common sense and intuition can define the specificity with which the jury must describe the defendant's conduct before it may convict."  Parker, 124 N.J. at 634 (quoting Note, Right to Jury Unanimity on Material Fact Issues:  United States v. Gipson, 91 Harv. L. Rev. 499, 502 (1977)).  In adhering to the letter and spirit of the Supreme Court's unanimity jurisprudence, we agree with defendant that there

A-5199-17T1

was a grave potential that – unlike T.C.[4] – the heaping together of a variety of factual contentions, allegedly occurring over the course of many years, into a single count, could have led to a conviction without the jury's unanimous agreement on the material facts.

As observed in Section II of this opinion, the allegations not only differed as to time and place but also in nature.  There were allegations of:  unwanted physical contact (spooning while watching television and pats on the buttocks); impertinent comments (about the size of the stepdaughter's breasts and other physical attributes, as well as references to the stepdaughter and a friend as "lesbians"); peeping (repeated entries into the bathroom while the stepdaughter was in the shower); and attempts at physical contact (requests to join the stepdaughter in her bunkbed).  Despite this variety, and the span of years over which these events were alleged to have occurred, the judge's instructions allowed the jury to lump everything together; he advised the jury that

> you may consider the totality of all the facts and circumstances regarding the defendant's alleged conduct toward [his stepdaughter] which you find to be credible and which you find that the State has proven beyond a reasonable doubt.  All jurors do not have to agree unanimously concerning which act allegedly committed by the defendant constituted sexual conduct

---

[4] Neither party cited T.C. or, for that matter, Frisby, possibly because they believed neither controls our disposition of this issue.

A-5199-17T1

which tends to corrupt, mar or spoil the morals of a child under the age of 16 <u>so long as all jurors believe that in the totality of the defendant's behavior, that one or more of his alleged acts constitute sexual conduct</u>.

[Emphasis added.]

These instructions – as the emphasized portions reveal – did not sufficiently impress on the jurors that they were required to share a common view of the material facts. Without clearer instructions about unanimity, this charge made possible a guilty verdict even if some jurors believed the only sexual conduct was defendant's entering into the bathroom while his stepdaughter showered, while others believed the only sexual conduct was defendant's constant patting of his stepdaughter's buttocks.

As the Supreme Court has held, whenever "a conviction may occur as the result of different jurors concluding that defendant committed different acts, the general unanimity instruction" – like that given here – "does not suffice." <u>Parker</u>, 124 N.J. at 636. We, thus, conclude that the judge was required to give greater specificity in instructing the jury about the requirement that they be unanimous as to the sexual conduct underlying their guilty verdict.

\* \* \*

A-5199-17T1

Because the judge's unanimity instruction was insufficient under the circumstances and deprived defendant of a fair trial, we reverse the judgment of conviction and remand for a new trial.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5199-17T1