STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. PATRICK J. FEDERICO, JR., DEFENDANT-RESPONDENT.

Argued February 4, 1986—Decided July 7, 1986.

*Linda K. Calloway,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney).

*Roger A. Lowenstein* argued the cause for respondent (*Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The critical question raised on this appeal is whether the State or the defendant must bear the burden of proof on the factor that distinguishes first- from second-degree kidnapping. That factor is whether the alleged kidnapper released the victim unharmed and in a safe place prior to apprehension. *N.J.S.A.* 2C:13–1c. The issue was raised for the first time at the sentencing hearing of defendant, Patrick J. Federico, Jr., but was rejected by the trial court. The Appellate Division found that the jury should have decided the degree of kidnapping and that the State bears the burden of persuasion that the victim was not released safe and unharmed. 198 *N.J.Super.* 120 (1984). As a result, the Appellate Division reversed the judgment of conviction against Federico and remanded the entire matter for a new trial. We granted the State's petition for certification, 102 *N.J.* 333 (1985), and now affirm the Appellate Division's judgment.

–I–

On a Saturday night in February 1983, Robert Hogan and defendant, Federico, approached Janique Brown, an admitted prostitute, who agreed to accompany the two men to Federico's residence for the purpose of performing sexual acts in exchange for the payment of money. As is set forth in greater detail in the Appellate Division's opinion, defendant committed various acts that terrorized Brown, such as placing a sawed-off shotgun to her head, swinging a hatchet overhead, and running a knife across her body, albeit without cutting her. 198 *N.J.Super.* 123–24. Eventually, Federico left Hogan and Brown and went upstairs to retire. Some hours later, Hogan told Brown how to turn the doorknob to circumvent the supposedly-electrified outside door. When Hogan also left the room, Brown fled. As she ran from the house, Brown encountered a patrol car and told the police how she had been confined and threatened.

Federico was indicted by the Grand Jury for kidnapping, criminal coercion (which was later dismissed on the State's

motion), aggravated assault, terroristic threats, possession of a prohibited weapon, and possession of a weapon for an unlawful purpose. The kidnapping count did not state that the defendant had not released the victim unharmed and in a safe place prior to apprehension.

In its jury instruction on the kidnapping count, the court explained that the State must prove beyond a reasonable doubt that the defendant confined the victim for a substantial period and that the confinement was for the purpose of terrorizing or inflicting bodily harm on her. The court did not, nor was it requested to, instruct the jury on the factor that distinguishes first- and second-degree kidnapping. The distinction is embodied in *N.J.S.A.* 2C:13–1c, which states "[k]idnapping is a crime of the first degree * * *. If the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree" (the unharmed release provision). The jury returned a verdict of guilty on all counts.

At the sentencing hearing, defense counsel raised for the first time the issue whether Federico's offense was properly considered first- or second-degree kidnapping. Ruling that defendant had not released Brown but that she had escaped, the court applied the penalties for first-degree kidnapping. After merging all the counts, except the shotgun-possession charge, the court sentenced Federico to twenty years, with eight years of parole ineligibility on the kidnapping count. Federico was also sentenced to a consecutive term of four years with one year of parole ineligibility on the remaining weapons charge.

The Appellate Division found that there was evidence from which the jury might have concluded that Brown was unharmed and that Federico had abandoned any attempt to continue to confine her. 198 *N.J.Super.* at 126. The court then held that "defendant was entitled to have the jury consider whether the crime was one of first or second degree," *id.* at 127, and that the State bears the burden of persuasion on a charge of first-degree kidnapping to convince the jury that the victim was

not released unharmed and in a safe place prior to apprehension. *Id.* at 128. Consequently, the Appellate Division reversed and remanded for a new trial on all counts.

Before the Appellate Division, defendant raised various issues, including the sufficiency of the indictment, in addition to the allocation of the burden of persuasion or proof on unharmed release. The Appellate Division declined to resolve those issues, and left them to the trial court on remand. *Id.* at 129–32. The defendant did not cross-petition for certification on these additional issues, and they are not before us.

–II–

The New Jersey Penal Code defines kidnapping:

a. Holding for ransom, reward or as a hostage. A person is guilty of kidnapping if he unlawfully removes another from the place where he is found or if he unlawfully confines another with the purpose of holding that person for ransom or reward or as a shield or hostage.

b. Holding for other purposes. A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:

(1) To facilitate commission of any crime or flight thereafter;

(2) To inflict bodily injury on or to terrorize the victim or another; or

(3) To interfere with the performance of any governmental or political function.

c. Grading of kidnapping. Kidnapping is a crime of the first degree and upon conviction therefor a person may, notwithstanding the provisions of 2C:44–1f., be sentenced to an ordinary term of imprisonment between 15 and 30 years. If the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree.

d. 'Unlawful' removal or confinement. A removal or confinement is unlawful within the meaning of this section and of sections 2C:13–2 and 3 if it is accomplished by force, threat or deception, or, in the case of a person who is under the age of 14 or is incompetent, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare. [*N.J.S.A.* 2C:13–1.]

Our focus is on the unharmed-release provision of subsection c. The importance of the provision is made manifest by the difference in the maximum penalties for first- and second-degree kidnapping. A conviction for first-degree kidnapping carries a maximum sentence of 30 years, *N.J.S.A.* 2C:13–1c, and

10 years for second-degree kidnapping, *N.J.S.A.* 2C:43–6a(2). As presented on this appeal, the critical question is whether the State or the defendant bears the burden of proof on the issue of. unharmed release.

The answer rests in the terms and legislative history of the Penal Code, which places on the State the burden of proving each element of an offense beyond a reasonable doubt. *N.J. S.A.* 2C:1–13a. In defining the elements of an offense, the Code provides in part:

> h. 'Element of an offense' means (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as
>
> (a) Is included in the description of the forbidden conduct in the definition of the offense * * *. [*N.J.S.A.* 2C:1–14h.]

With respect to kidnapping, harming or failing to release the victim constitutes forbidden conduct, *N.J.S.A.* 2C:1–14h(1)(a), or represents an attendant circumstance, *N.J.S.A.* 2C:1–14h(2)(a), that elevates the crime to one of the first-degree, *N.J.S.A.* 2C:13–1c. *See State v. Ingram,* 98 *N.J.* 489, 493 (1985) (similarly interpreting *N.J.S.A.* 2C:1–14h(a) as applied to the offense of possession of a handgun without a permit).

By comparison, it is only with respect to a defense that the Code places the burden of proof on the defendant. *N.J.S.A.* 2C:1–13b(2). Whenever the Code provides such a defense, it is so described along with the requisite burden of proof. *See, e.g., N.J.S.A.* 2C:2–12b (defendant shall be acquitted if he proves entrapment by a preponderance of evidence); *N.J.S.A.* 2C:37–2c (participation as only a player, if established by clear and convincing evidence, is a defense to gambling prosecution). *See also* Final Report New Jersey Criminal Law Revision Commission: Vol. II at 36 (Final Report) (Code must "plainly" provide for such instances when the defendant is expected to shoulder the burden of persuasion). Moreover, in no instance does the Code place on the defendant the burden of persuasion on the factor that distinguishes between grades of an offense. On its face, therefore, the Code contemplates that the State must prove beyond a reasonable doubt either that the victim was harmed or not released in a safe place prior to apprehension.

That conclusion is consistent with the legislative history of the kidnapping provisions in the Penal Code. The New Jersey Criminal Law Revision Commission (the Commission), which drafted the Penal Code, recognized the danger of abusive prosecution for kidnapping, and for that reason determined that the crime be defined to reflect criminally-significant events. Final Report, *supra*, at 182 (quoting Model Penal Code § 212.1 comment at 13–15 (Tent. Draft No. 11, 1960)). To that end, the drafters stated that kidnapping should be defined to exclude "[t]he criminologically non-significant circumstance that the victim was detained or moved incident to the crime * * *." *Id.*

We have echoed the drafters' concern about the potential for abusive prosecutions for first-degree kidnapping. *State v. Masino*, 94 *N.J.* 436, 440–48 (1983). Thus the State does not meet the asportation element of kidnapping by proving merely that the victim was moved incidental to the commission of the underlying crime. *Id.* at 447.

The thirty-year maximum sentence for first-degree kidnapping, exceeded only by the maximum punishment for murder, is warranted where the circumstances make the incident "specially terrifying and dangerous." Final Report, *supra*, at 182–83 (quoting Model Penal Code comment, *supra*, at 15). In that vein, the Commission commented: "The Code does have 'upgrading' provisions: It makes kidnapping a crime of the first degree when the defendant does not voluntarily release the victim alive and in a safe place prior to apprehension." Final Report, *supra*, at 186. The Commission explained the policy of the upgrading provision:

> It seems to us that the main justification for treating kidnapping as seriously as murder or aggravated rape is the likelihood of a victim disappearing permanently during a kidnapping, without possibility of proving murder. Accordingly, we propose to maximize the kidnapper's incentive to return the victim alive by making first degree penalties apply only if the victim is not 'released alive in a safe place.' [Final Report, *supra*, at 186 (quoting Model Penal Code comment, *supra*, at 19.]

Consistent with our interpretation of the Code and its legislative history, the jury instructions promulgated by the Supreme

Court's Committee on Model Jury Charges provide "that it is the burden of the State at all times to prove beyond a reasonable doubt either that the defendant *did not* release the victim unharmed prior to his apprehension *or* that the defendant *did not* release the victim in a safe place prior to his apprehension." (emphasis in original.)

In deciding that the State bears the burden of disproving unharmed release, the Appellate Division relied to some extent on its analysis of federal constitutional law. 198 *N.J.Super.* at 128–29. Because we conclude as a matter of statutory construction that the State bears that burden, we need not determine whether this result is compelled by either the United States or New Jersey constitutions.

–III–

In assaying the effect of the trial court's failure to charge the jury that the State bears the burden of proving unharmed release, we recognize that the failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel. *State v. Grunow*, 102 *N.J.* 133, 148 (1986); *State v. Collier*, 90 *N.J.* 117, 122–23 (1982); *State v. Green*, 86 *N.J.* 281, 288 (1981). Thus, in *State v. Butler*, the Court reversed a felony-murder conviction because the trial court failed to instruct the jury on the elements of the underlying robbery felony. 27 *N.J.* 560 (1958). Justice Francis explained:

> To fail to define the offense attributed to the accused and the essential elements which constitute it, is to assume that jurors are educated in the law—an assumption which no one would undertake to justify. * * * Accordingly, we hold the view that a mandatory duty exists on the part of the trial judge to instruct the jury as to the fundamental principles of law which control the case. Among such principles is the definition of a crime, the commission of which is basic to the prosecution against the defendant. And the duty is not affected by the failure of a party to request that it be discharged. [*Id.* 27 *N.J.* at 595.]

Notwithstanding that admonition, the State urges that we mold the verdict to constitute a conviction for second-degree

kidnapping. That argument is premised on the jury's implicit finding of confinement for a substantial period with purpose to terrorize, which constitute the essential elements of second-degree kidnapping. The suggestion, however, would force us to speculate about how the jury would have determined the matter if it had been properly charged. *See State v. Crisantos (Arriagas)*, 102 *N.J.* 265 (1986); *State v. Grunow, supra*, 102 *N.J.* at 148–49. Our respect for the unique role of the jury in criminal cases precludes us from trying to salvage the conviction by tampering with the jury's deliberations. The only alternative is to reverse the kidnapping conviction and remand the matter for a new trial. That conclusion also pertains to the convictions that are unrelated to the kidnapping count, which was the most serious charge against Federico.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the Law Division.

*For affirmance and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.